UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

|  |  |
|---|---|
| PROGRESSIVE PLUMBING, INC., | Chapter 11<br>Case No.: 6:15-bk-07275-KSJ |
| PROGRESSIVE SERVICES, LLC, and<br>GRACIOUS LIVING DESIGN<br>CENTER, INC. | Jointly Administered with<br>Case No.: 6:15-bk-07276-KSJ<br>Case No.: 6:15-bk-07277-KSJ |

     Debtors.

_____/


PROGRESSIVE PLUMBING, INC.,

     Plaintiff/Debtor,

v.

THE EVERGREEN CORPORATION,          Adv. Pro. No. _____-KSJ
and ALLIED WORLD SPECIALTY
INSURANCE COMPANY,

     Defendants.

_____/

## **COMPLAINT FOR DECLARATORY RELIEF TO DETERMINE CLAIMS**

**COMES NOW** Debtor and Plaintiff Progressive Plumbing, Inc. ("Debtor" or "Plaintiff"), by and through its undersigned counsel, and files this Complaint for Declaratory Relief to Determine Claims of Defendants The Evergreen Corporation ("Evergreen") and of Allied World Specialty Insurance Company ("Allied," and together with Evergreen, the "Defendants") pursuant to 11 U.S.C. §§ 105 & 502, 28 U.S.C. § 2201, and Federal Rules of Bankruptcy Procedure 3007, 7001, & 7020 (the "Complaint").  As grounds therefor, Plaintiff respectfully shows as follows:

**JURISDICTION**

1.     On August 24, 2015 (the "Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101 *et seq*. (the "Bankruptcy Code").

2.     This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157, 1334, & 1367 and 11 U.S.C. § 502.

3.     Venue of the bankruptcy case and this adversary proceeding in this district is proper pursuant to 28 U.S.C.  §§ 1408 and 1409.

4.     This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (C), & (O).

**PARTIES**

5.     Debtor is a Florida corporation with its principal place of business located in Clermont, Florida.

6.     Allied is a Delaware corporation with its principal place of business located in Farmington, Connecticut.

7.     Evergreen is a Georgia corporation with its principal place of business located in Atlanta, Georgia.

**FACTUAL BACKGROUND**

8.     On or about February 14, 2014, Debtor and Evergreen entered into that certain Subcontract having No. 15-49.100 (the "Subcontract").  A copy of the Subcontract is attached hereto as **Exhibit A**.

9.     The Subcontract provided for Debtor to perform plumbing work on the construction of the Hyatt House hotel in Downtown Atlanta, Georgia (the "Hyatt Project").

10.     The total Subcontract price was agreed as $978,000.00.

11.    On March 20, 2013, Debtor and Allied entered into that certain General Indemnity Agreement (the "GIA") whereby Allied agreed to stand as surety for certain jobs performed by Debtor.  A copy of the GIA is attached as **Exhibit B**.

12.    Pursuant to the GIA, on June 10, 2014, Allied issued that certain Bond No. D00000186 in favor of Evergreen, as obligee, on the Hyatt Project with a bond penal sum of $978,000.00 (the "Bond").  A copy of the Bond is attached hereto as **Exhibit C**.

13.    Debtor proceeded with performing its obligations under the Subcontract. However, in March 2015, after consultation with and upon the advice of Allied, Debtor ceased work on the Hyatt Project.   Allied then took responsibility for working with Evergreen to complete the project.

14.    At the time that Debtor ceased work on the Hyatt Project, Debtor had performed or installed $855,972.33 worth of work and materials under the Subcontract and only a fraction worth of work and materials remained to be completed and installed.

15.    Allied assisted with finding three bidders for the completion work: Polk County Public Service Inc. ("Polk County" or "Replacement Contractor"), Stasco Mechanical Contractors, Inc., and Fitzgerald & Sons Plumbing Company.  Although Stasco submitted the lowest bid, Evergreen indicated that it preferred working with Polk County, then the second highest bidder, based on a history of working together. Evergreen spoke with them and renegotiated its price lower and eventually selected Polk County as the replacement subcontractor.

16.    Evergreen, however, failed to properly oversee and manage Polk County and Polk County and Evergreen entered into no less than 41 change orders, back charges, and other items

that massively and improperly increased the cost and scope of the Subcontract.  Examples of these improper change orders include the following:

    a.   Change Orders Nos. 4, 5, 19, & 20 include $135,775.00 in drywall work which was not a part of the scope of the Subcontract and for which Evergreen has provided no documentation or substantiation.

    b.   Item #3 includes $33,186.99 for temperature heating due to failed gas inspections, but neither heat nor gas would have been available at the time these charges were allegedly incurred and no written notice of these charges was ever given as required under the Subcontract.

    c.   Item #8 includes $16,420.00 in damages for a roof drain leak which has never been substantiated by Evergreen, which is duplicative of other charges asserted by Evergreen, and for which no notice was given.

    d.   Items #31-35 include $559,616.00 in charges by Polk County Public Service which amounts are unsubstantiated and unexplained and which amounts, even assuming *arguendo* for legitimate work, including highly excessive markups.

    e.   Items #37, 38, and related include $139,484.00 in charges by Evergreen for legal fees, contract supervision, and "administrative burdens" which amounts are unreasonable and far in excess of amounts permissible under the Subcontract.

17.   The change orders, back charges, and other items asserted by Evergreen total $1,042,224.00, for a Subcontract which had an initial total price of $978,000.00.

18.   When Debtor ceased working on the Hyatt Project, Debtor had completed $855,972.33 of the Subcontract, which means that after Evergreen and Polk County took over

4

completion of the Subcontract, the total cost of the Subcontract ballooned to $1,898,196.33, almost *double* the original price.

19.    On August 21, 2015, Evergreen sent a demand letter to Debtor stating that pursuant to the Subcontract, Evergreen had formally reached a decision that Debtor owed Evergreen $729,799.00 for the completion work, change orders, back charges, and other items (the "Demand").  A copy of the Demand is attached hereto as **Exhibit D**.

20.    On September 25, 2015, Evergreen has also demanded $729.799.00 from Allied under the Bond. A copy of the demand to Allied is attached hereto as **Exhibit E**.

21.    The $729,799.00 amount requested by Evergreen in the Demand is not supported by the facts or by the Subcontract and should be disallowed as a claim against the Debtor's estate:

    a.    Evergreen grossly overpaid for the replacement of pipe couplings.

    b.    Evergreen overpaid for the installment of water heaters based on the amount of work that was actually accomplished.

    c.    Evergreen overpaid for fixtures that were not delivered.

    d.    Evergreen was overpaying for other materials that were never delivered or in some instances not even ordered.

    e.    Evergreen is attempting to charge Debtor with things that are not within its scope of work, such as gas for heating the building.

    f.    Evergreen is trying to obtain from Debtor and Allied hundreds of thousands of dollars in losses in relation to the installation of the plumbing system, including ripping out and installing drywall and various labor costs, due wholly to the fact

that Evergreen failed to adequately supervise the job.  With proper supervision none of the costs now being claimed would have been incurred.

g.   Upon information and belief, Evergreen's lack of oversight on the job led to the vandalism of fixtures or other items on the worksite.

22.   Pursuant to the GIA, Debtor and its estate may be liable to Allied for any amounts Allied is forced to pay on account of its Bond issued in favor of Evergreen.  This dispute and lack of finality over the amount due to Evergreen, if any amount is even due, is at the heart of the Debtor's bankruptcy.

23.   Without judicial determination of the true amount of the Evergreen claim against both Debtor and Allied, if any amount is owed at all, Debtor cannot formulate a plan and cannot fully and finally resolve it's disputes with Allied.

24.   The Court must adjust the debtor / creditor relationship between Debtor and Evergreen, and thereby between Debtor and Allied, in order for this bankruptcy case to proceed.

25.   This proceeding is needed to resolve a necessary administrative function of the bankruptcy Court in this case and will significantly impact the future liquidation and distribution of estate assets.

26.   The claims objection process will be insufficient procedurally to resolve this issue as all three parties are indispensable to a full resolution.

27.   The uncertainty surrounding the Demand, and the consequent potential obligations to Evergreen and Allied, hinder the business and reorganization planning of the Debtor.  To protect its interests, the Debtor needs an expedited determination of the amounts due Evergreen and Allied based on the Subcontract or a determination that no amount is due.

## COUNT I – DECLARATORY JUDGMENT

28.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 27 above.

29.     An actual, ripe, and justiciable controversy exists between Plaintiff and Defendants regarding whether Plaintiff in fact owes any money to Defendant Evergreen related to the Hyatt Project and the Subcontract, and consequently, whether Debtor owes any money to Allied on account of the GIA and the Bond.

30.     For the reasons stated above and for additional reasons, the Demand issued by Evergreen to Debtor and to Allied is unreasonable and unsubstantiated by the facts.

31.     The Demand seeks payment for change orders, back charges, and other items which were not properly noticed to Debtor or Allied, which were never substantiated by Evergreen, and which are in violation of the terms of the Subcontract.

32.     Through the Demand, Evergreen now seeks to recover from Plaintiff in change orders, back charges, and other items an amount which is nearly double the original cost of the entire Subcontract.

33.     The real amounts owed to Evergreen, if any, are sufficiently covered by the retainage amount withheld by Evergreen, and therefore Plaintiff owes nothing to Evergreen.

34.     The outstanding potential liability of the Demand is currently preventing the Debtor from proposing a plan of reorganization and must be resolved in order to resolve this chapter 11.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment (a) declaring that Plaintiff owe nothing to Evergreen under the Subcontract and/or Bond and that the amounts sought in the Demand are unjustified, (b) disallowing any claim of Evergreen

brought against the Debtor in this case, and (c) granting such other relief as this Court deems proper.

Respectfully submitted this 23rd of October, 2015.

/s/ Michael A. Nardella
Michael A. Nardella, Esq.
Florida Bar No. 051265
Nardella & Nardella, PLLC
250 East Colonial Drive, Suite 102
Orlando, FL 32801
(407) 966-2680
mnardella@nardellalaw.com

Counsel for Debtor

and

/s/ Roman V. Hammes
Roman V. Hammes, Esq.
Florida Bar No. 087250
Roman V. Hammes, P.L.
250 East Colonial Drive, Suite 305
Orlando, FL 32801
(407) 650-0003
roman@romanvhammes.com

Counsel for Debtor