UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| PROGRESSIVE PLUMBING, INC., PROGRESSIVE SERVICES, LLC, and GRACIOUS LIVING DESIGN CENTER, INC., | Case No.: 6:15-bk-07275-KSJ Jointly Administered with Case No.: 6:15-bk-07276-KSJ Case No.: 6-15-bk-07277-KSJ |
| Debtors. | |
| _____/ | |
| PROGRESSIVE PLUMBING, INC., | |
| Plaintiff/Debtor, | Adversary Proceeding No.: 6:-15-ap-00145-KSJ |
| v. | |
| THE EVERGREEN CORPORATION, and ALLIED WORLD SPECIALTY INSURANCE COMPANY, | |
| Defendants. | |
| _____/ | |
| ALLIED WORLD SPECIALTY INSURANCE COMPANY, | |
| Cross-Plaintiff, | |
| THE EVERGREEN CORPORATION, | |
| Cross-Defendant. | |
| _____/ | |

**ALLIED WORLD SPECIALTY INSURANCE COMPANY'S ANSWER AND CROSSCLAIM**

## JURISDICTION

1. Admit.

2. Admit.

3. Admit

4. Admit

## PARTIES

5. Allied lacks knowledge or information sufficient to form a belief about the truth of this allegation.

6. Admit

7. Allied lacks knowledge or information sufficient to form a belief about the truth of this allegation.

## FACTUAL BACKGROUND

8. Admit there is a contract between Debtor and Evergreen dated February 14, 2014. Allied lacks knowledge or information sufficient to form a belief about the truth of the remainder of the allegation. The Subcontract speaks for itself.

9. Admit that the Subcontract states that it was for plumbing work. The Subcontract speaks for itself.

10. Admit that the subcontract price as listed in the subcontract was $978,000. The Subcontract speaks for itself.

11. Admit an Agreement of Indemnity was entered into by Progressive in favor of Allied. Deny the remainder of the allegation and demand strict proof thereof.

12. Admit that bond D00000186 was issued on the Hyatt Project in favor of Evergreen in the bond penal sum of $978,000; deny the remainder of the allegation and demand strict proof thereof.

13. Deny and demand strict proof thereof.

14. Allied lacks knowledge or information sufficient to form a belief about the truth of this allegation.

15. Admit.

16. Admit that Evergreen failed to properly oversee and manage Polk County. Allied lacks knowledge or information sufficient to form a belief about the truth of the remainder of the allegation.

17. Allied lacks knowledge or information sufficient to form a belief about the truth of this allegation.

18. Allied lacks knowledge or information sufficient to form a belief about the truth of this allegation.

19. Admit that there was a demand letter dated August 21, 2015 from Evergreen to Debtor. Allied lacks knowledge or information sufficient to form a belief about the truth of the remainder of the allegation.

20. Denied. The September 25, 2015 letter demanded payment of $797,522.

21. Allied lacks knowledge or information sufficient to form a belief about the truth of this allegation.

22. Admit that pursuant to the Agreement of Indemnity, Progressive and the bankruptcy estate may be liable to Allied for any amounts Allied is forced to pay on account of its Bonds issued in favor of Evergreen. Admit that this dispute lacks

finality over the amount due to Evergreen if any amount is due. Allied lacks knowledge or information sufficient to form a belief about the truth of the remainder of this allegation.

23. Admit that without judicial determination of the true amount of the Evergreen claim against Debtor and Allied, Allied and Debtor cannot resolve their dispute. Allied lacks knowledge or information sufficient to form a belief about the truth of the remaining part of this allegation.

24. Admit.

25. Admit.

26. Allied lacks knowledge or information sufficient to form a belief about the truth of this allegation.

27. Allied lacks knowledge or information sufficient to form a belief about the truth of this allegation.

## COUNT I – DECLARATORY JUDGMENT

28. Allied realleges and incorporates by reference the allegations contained in paragraphs 1 through 27 above.

29. Admit.

30. Admit that the Demand issued by Evergreen to Allied is unreasonable and unsubstantiated by the facts. Allied lacks knowledge or information sufficient to form a belief about the truth of the remainder of the allegation.

31. Admit that the Demand seeks payment for change orders, back charges, and other items which were not properly noticed to Allied, which were never substantiated

by Evergreen and violate the Subcontract. Allied lacks knowledge or information sufficient to form a belief about the truth of the remainder of this allegation.

32. Admit that the Evergreen demand to Allied is almost double the original contract price. Allied lacks knowledge or information sufficient to form a belief about the truth of the remainder of the allegation.

33. Allied lacks knowledge or information sufficient to form a belief about the truth of this allegation.

34. Allied lacks knowledge or information sufficient to form a belief about the truth of this allegation.

## CROSS CLAIM

Cross-Plaintiff Allied World Specialty Insurance Company ("Cross-Plaintiff" or "Allied" or "Surety"), by and through its undersigned counsel and pursuant to Rule 7013 of the Rules of Bankruptcy Procedure and Rule 13 of the Federal Rules of Civil Procedure, files this Cross-Complaint against The Evergreen Corporation, and states as follows:

## JURISDICTION

1. On August 24, 2015 (the "Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101 *et seq*. (the "Bankruptcy Code").

2. This Court has jurisdiction over this adversary proceeding and cross-claim pursuant to 28 U.S.C. §§ 157, 1334 & 1367 and 11 U.S.C. § 502.

3. Venue of the bankruptcy case, the adversary proceeding and this cross-claim is proper in this district under 28 U.S.C. §§ 1408 and 1409.

4. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (C) & (O).

## PARTIES

5. Allied is a Delaware corporation with its principal place of business located in Farmington, Connecticut.

6. Evergreen is a Georgia corporation with its principal place of business located in Atlanta, Georgia.

## FACTUAL BACKGROUND

7. On or about February 14, 2014, Progressive and Evergreen entered in a contract for Progressive to provide plumbing services ("Subcontract" or "Hyatt House Subcontract") on a project known as Hyatt House at Downtown Atlanta ("Hyatt House Project") **(See Exhibit A, Progressive/Evergreen Subcontract)**. The Subcontract price is $978,000.

8. Progressive and Evergreen entered into a similar contract for plumbing services on a project known as Hyatt Place at Columbia, South Carolina.

9. Progressive's surety, Allied, issued performance bonds and labor and materials payment bonds on nine contracts on behalf of Progressive, two of which involved Evergreen as the bond obligee. Bond number D00000186 was issued for the benefit of Evergreen, the bond obligee and general contractor on the Hyatt House Project ("Hyatt House Bond")**(See Exhibit B, Hyatt House Bonds)**, and bond number D00000182 was

issued for the benefit of Evergreen on the Hyatt Place project in Columbia, South Carolina.

10. As a precondition for issuing the bonds, Progressive entered into an Agreement of Indemnity, on or about March 20, 2013, whereby Progressive agreed to indemnify Allied for any losses suffered by Allied in the course of performing under the Bonds. **(Exhibit C, Agreement of Indemnity).** The Agreement of Indemnity constitutes a financing statement and security agreement under the Uniform Commercial Code and was recorded together with a UCC1 on February 10, 2015.

11. The Agreement of Indemnity stipulates that Progressive assigns to the Surety "any and all sums that may be due or hereafter become due on account of any and all contracts referred to in the Bonds . . . ." **(Exhibit C, Agreement of Indemnity Section 5.1)** , and that the Surety has the right to use any collateral upon an event of default. **(Exhibit C, Agreement of Indemnity Section 4.2)**.

12. The definition of Event of Default in the Agreement of Indemnity includes "any abandonment, breach of or failure, refusal or inability to perform, any contract referred to in the Bonds or of any breach of any said Bonds[.]"**(Exhibit C, Agreement of Indemnity Section 5.2).**

13. Progressive began performing its obligations on the Hyatt House Project. However, problems began to surface in or around the Fall of 2014 when Progressive became unable or unwilling to pay the bills of subcontractors, suppliers, or materialmen on the Hyatt House Project. Progressive's problems increased in severity and culminated in Progressive abandoning the Hyatt House Project in or around March 16, 2015. Shortly

thereafter, on or about March 20, 2015, Evergreen terminated Progressive for defaulting under the Subcontract **(Exhibit D, Letter of Termination)**. [1]

14. A significant factor contributing to Progressive's problems on the job was Evergreen's failure to properly oversee Progressive's work, in violation of its administrative duties as found in the Subcontract, which led to massive inefficiencies, incompetent work, and significant overpayments to Progressive. This was despite the Subcontract provision that provided that "The Work shall be performed and furnished under the direction and to the satisfaction of Architect and Construction Manager." **(See Exhibit A, Progressive/Evergreen Subcontract).** This is hardly what happened. Evergreen's lack of supervision allowed the costs of completion to balloon to a point where the costs in excess of the original contract price nearly equaled the original contract value.

15. Although the cost to complete seemed to increase monthly, Evergreen eventually issued a letter to Progressive on or about August 21, 2015 demanding payment of $729,799, an amount allegedly covering deductive change orders, identified back charges, plumbing completion and remediation costs, legal costs, construction manager's extra supervision and management costs, and administrative burden. **(Exhibit E, Evergreen demand letter to Progressive)**.

---

[1] Following Progressive's termination, Allied assisted Evergreen in finding three contractors to bid on the completion work: Polk County Public Service Inc., Stasco Mechanical Contractors, Inc., and Fitzgerald & Sons Plumbing Company. Stasco was initially the low bidder, but Evergreen indicated that it preferred working with Polk County because the two companies had worked together in the past. After negotiating a lower price with Polk County, Evergreen selected Polk as the replacement subcontractor.

16. A similar letter was issued to Allied on or about September 25, 2015 demanding payment of $797,522, purportedly for the costs to complete Progressive's work above the remaining Subcontract balance **(Exhibit F, Evergreen demand letter to Allied)**. [2]

17. The demands being made upon Progressive and Allied for completion and other costs are inflated well above what would be considered an appropriate amount, if any amount is appropriate, due to a combination of lack of oversight by Evergreen, overpayments to Progressive, and improper charges being attributed to Allied and Progressive. The instances are numerous:

    a. Evergreen grossly overpaid for the replacement of pipe couplings.

    b. Evergreen overpaid for the installment of water heaters based on the amount of work that was actually accomplished.

    c. Evergreen overpaid for fixtures that were not delivered.

    d. Evergreen overpaid for other materials that were never delivered or in some instances not even ordered.

    e. Evergreen charged Progressive with things that are not within its scope of work, such as gas for heating the building.

    f. Evergreen charged Progressive and Allied with over $100,000 in losses in relation to the installation of the plumbing system, including ripping out and installing drywall and various labor costs, due wholly to the fact that Evergreen failed to adequately supervise the job. In particular, Evergreen

---

[2] This demand is for completion costs is separate from the $757,107.33 in losses that was memorialized in a note signed by Progressive and Progressive's indemnitors on or around July 9, 2015.

       knew that other trades were covering up Progressive's deficient work before full testing the work.

    g. Upon information and belief, Evergreen's lack of oversight on the job led to the vandalism of fixtures or other items on the worksite.

18. Evergreen failed to properly oversee, supervise, and administer the Hyatt House Subcontract, resulting in payments for work that were patently defective, patently non-conforming, or not even performed, which improperly depleted contract balances to the detriment of the Surety.

19. Evergreen had an obligation to administer the Subcontract and the Subcontract funds and supervise the Subcontract work.

20. With proper supervision and administering of the contract, none of the costs now being claimed would have been incurred.

21. If the Court determines that Allied, as surety and secondary obligor on the Hyatt House Bonds, is liable to Evergreen on the Hyatt House Project, Allied is entitled to a reduction in liability in the form of a credit for any contract funds available on the Hyatt Place and Hyatt House projects, which would otherwise be due and payable to Progressive.

22. The rights of Allied to the contract balances arise under the Agreement of Indemnity, by Allied's status as a secured creditor under the Uniform Commercial Code, and through Allied's rights of equitable subrogation.

23. Allied's rights to the contract balances were initially triggered when Progressive failed to perform under the Agreement of Indemnity, Subcontract, and Bonds as early as Fall 2014, giving rise to an Event of Default under the Agreement of Indemnity. A

subsequent Event of Default occurred in March 2015, when Evergreen abandoned the Hyatt House Project altogether.

24. If the Court finds that Allied is liable to Evergreen under either Hyatt House Bond, such liability is completely derivative of the Bonds, in that if Allied were not the surety, it would have no liability at all.

25. If the Court determines some level of liability to Evergreen, Allied is further entitled to a reduction in liability for overpayments and other improper payments made by Evergreen because such payments have improperly depleted the contract balances, which have impaired Allied's rights of equitable subrogation to the contract balances and have increased Allied's risk of loss.

## COUNT I – DECLARATION OF RIGHTS

26. Allied realleges and incorporates by reference the allegations contained in paragraphs 1 through 25 above.

27. An actual controversy exists between Allied and Evergreen regarding whether Allied owes any money to Evergreen, and if so, the amount that is owed.

28. Any money owed, if any, will affect Allied's claim against the bankruptcy estate because Allied will be seeking reimbursement from the Debtor's estate for the amount that is owed to Evergreen. Allied's claim derives from Evergreen's claim.

29. Allied first and foremost asks this Court to determine that it has no liability to Evergreen, but if it is determined that such liability exists, Allied asks for a reduction in this liability in accordance with the following:

   h. A reduction in liability for overpayments and other improper payments on the Hyatt House Project of at least $100,000;

i. A reduction of at least $69,643, representing contract balances available on the Hyatt Place, Columbia, South Carolina job that Evergreen's surety indicated would be setoff against the Hyatt House job in its October 20, 2015 letter to Progressive **(Exhibit G, Chubb letter)**. Allied's right to the setoff has its basis in the Hyatt Place subcontract and in common law;

j. A reduction of at least $168,396, representing contract balances available on the Hyatt House Project that Evergreen failed to offset by failing to exercise its rights under the Subcontract and under common law; and

k. A reduction for amounts deriving from patently defective and nonconforming workmanship.

l. Allied's liability should be reduced in whole or in part by the cardinal change doctrine if the value of Progressive's Subcontract has virtually doubled without proper notice to the surety.

WHEREFORE, Allied World Specialty Insurance Company respectfully requests entry of an order by this Court adjudicating that it has no liability to Evergreen, or in the alternative, if such liability exists, reducing Allied's liability by crediting the amount owed to Evergreen for (a) remaining contract balances on the Hyatt Place, Columbia, SC project, (b) remaining contract balances on the Hyatt House, Downtown Atlanta project, (c) overpayments to Progressive that have improperly depleted the contract balances to the detriment of Allied, (d) other improper payments being attributed to Allied and Progressive that have also improperly depleted the contract balances to the detriment of Allied, and for any such other relief deemed just and proper.

Dated: November 25, 2015

                              Respectfully submitted,

                              /s/Jonathan P. Cohen
                              Jonathan P. Cohen
                              Florida Bar No.: 11526
                              **Jonathan P. Cohen, P.A.**
                              500 E. Broward Blvd.
                              Suite 1710
                              Fort Lauderdale, FL 33394
                              (954) 462-8850
                              (954) 848-2987 -fax
                              jcohen@jcohenpa.com
                              service@jcohenpa.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served by CM/ECF on the 25th day of November, 2015 to Michael A Nardella, Esq., Nardella & Nardella, PLLC, 250 East Colonial Drive, Ste. 102, Orlando, FL 32801 (mnardella@nardellalaw.com), Roman V. Hammes, Esq., Roman V. Hammes, P.L., 250 East Colonial Drive, Suite 305, Orlando, FL 32801 (roman@romanvhammes.com), and Michael A. Tessitore Moran Kidd Lyons & Johnson, P.A., 111 N. Orange Ave., Suite 900, Orlando, Florida 32801 (mtessitore@morankidd.com).

                              /s/Jonathan P. Cohen
                              Jonathan P. Cohen